# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | PHILIP G. REINHARD | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2001 C 50203 | **DATE** | 11/05/2001 |
| **CASE TITLE** | John J. Clay, #1000751, et al. vs. Sheriff Richard A. Meyers, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)　☐　Filed motion of [ use listing in "Motion" box above.]

(2)　☐　Brief in support of motion due _____ .

(3)　☐　Answer brief to motion due_____ . Reply to answer brief due_____ .

(4)　☐　Ruling/Hearing on _____ set for _____ at _____ .

(5)　☐　Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6)　☐　Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7)　☐　Trial[set for/re-set for] on _____ at _____ .

(8)　☐　[Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9)　☐　This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
　　　　☐ FRCP4(m)　☐ General Rule 21　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10)　■　[Other docket entry]　Enter Memorandum Opinion and Order. Justin Jones' motion for leave to proceed in forma pauperis [8-1] is denied, Jones and Smith are dismissed as plaintiffs. Plaintiff Clay's motion for leave to proceed in forma pauperis [3-1] is granted. The trust fund officer at the institution in which Clay is incarcerated is directed to make deductions and payments as set forth in the attached order. The complaint is dismissed for failure to state a claim upon which relief may be granted. Plaintiff may file an amended complaint within thirty days of this order. If he fails to do so, this action will be dismissed with prejudice. The clerk shall send a copy of the attached order to the trust account supervisor at the Winnebago County Jail, and send plaintiff five copies of the court's amended complaint form.

(11)　■　For further detail see order attached to the original minute order.

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV – 7 2001 | |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | NOV – 7 2001 | |
| | courtroom deputy's initials | date mailed notice | |
| | | mailing deputy initials | |

Document Number

U.S. DISTRICT COURT
Date/time received in central Clerk's Office

2001 NOV –5 AM 10: 50

FILED–WD

**DOCKETED**

**NOV - 7 2001**

JOHN CLAY, et al.,         )
                        )
     Plaintiffs,      )
                        )     No. 01 C 50203
     v.           )
                        )     Judge Philip G. Reinhard
BETTY RICE, MAJOR HOUI and    )
DICK MEYERS,         )
                        )
     Defendants.    )

## MEMORANDUM OPINION AND ORDER

This *pro se* civil rights suit complaining of conditions in the Winnebago County Jail was brought by three plaintiffs, John Clay, Justin Jones, and Wentz Smith. Named as defendants are Betty Rice, health care administrator at the Jail, Major Houi, and Winnebago County Sheriff Richard A. Meyers. Although all three plaintiffs were named in the caption of the complaint and signed the pleading, only plaintiff Clay submitted a petition for leave to proceed in forma pauperis. By order dated August 23, 2001, the court directed plaintiffs Jones and Smith to submit their own applications for leave to proceed in forma pauperis so that initial partial filing fees required by 28 U.S.C. § 1915(b)(1) could be assessed for each plaintiff. Jones responded; Smith did not.

Subsequently the court was apprised of the Eleventh Circuit's opinion in *Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001), interpreting 28 U.S.C. § 1915(b)(1), part of the Prison Litigation Reform Act of 1996 (PLRA). The Eleventh Circuit in *Hubbard* held that the requirement of § 1915(b)(1), "if a prisoner brings a civil action ... in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee," means exactly what it says. A group of prisoners cannot join in bringing a federal suit without prepaying the filing fee. If they seek to proceed in forma pauperis, triggering the partial payment assessment and collection mechanism of 28 U.S.C. § 1915(b), the court may not apportion the filing fee among them, since in that event each plaintiff would not be required to pay "the full amount of a filing fee." Since

28 U.S.C. § 1914(a) sets the filing fee at $150 per civil suit, a district court cannot assess multiples of the fee so that each co-plaintiff pays the full $150; each plaintiff must bring a separate suit and pay a separate filing fee. With respect to prisoners' suits brought in forma pauperis, the Eleventh Circuit held, § 1915(b)(1) overrides Rule 20 of the Federal Rules of Civil Procedure, which otherwise permits plaintiffs to join in a single suit when their claims against the same defendants arise out of the same transaction or occurrence. *Id.*, 262 F.3d at 1197-98.

The PLRA is poorly thought out in many respects. Probably the worst provision is the fee assessment and collection procedure of 28 U.S.C. § 1915(b). Among its many other shortcomings, this provision refers only to "the prisoner" and neglects to address the case of multiple prisoner-plaintiffs. Attempting to fill the gap, district courts from time to time have divided the filing fee among multiple plaintiffs and assessed separate initial partial payments for each plaintiff, but it was uncertain whether collection from a co-plaintiff's account should stop when he had paid his proportionate share of the fee, or whether payments should be collected from all co-plaintiffs until the full $150 had been collected. Institutional trust fund administrators -- co-plaintiffs could end up in different institutions -- and district court clerks were left to figure out how to track payments from multiple plaintiffs and credit them toward a single filing fee.

While *Hubbard* is not binding precedent in this circuit, the court finds it persuasive and believes the Seventh Circuit will follow it. Although district courts are tempted to apply common sense to bandage a badly-drafted statute, lawmaking is Congress's responsibility, not ours. The Seventh Circuit has warned district courts that "`common sense' is a treacherous guide to statutory interpretation. ... a court should implement the language actually enacted--provided the statute is not internally inconsistent or otherwise absurd." *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998). That is what the Eleventh Circuit has done in *Hubbard*, and the result is neither inconsistent nor absurd.

Requiring each plaintiff to file his own suit makes litigation more expensive for prisoners who could otherwise join their claims in one action. Nevertheless, it does not deny prisoners access to federal courts, since 28 U.S.C. § 1915(b) provides for the filing fee to be paid in installments and 28 U.S.C. § 1915(b)(4) guarantees access to the court even if a prisoner can pay nothing. Congress may constitutionally make litigation more burdensome for prisoners than for other indigent plaintiffs because the propensity of prisoners to file frivolous lawsuits is an adequate rational basis for treating prisoners differently. *See Lucien v. DeTella*, 141 F.3d 773, 775 (7th Cir. 1998); *Zehner v. Trigg*, 133 F.3d 459, 463-64 (7th Cir. 1997).

As the Eleventh Circuit in *Hubbard* observed, requiring each plaintiff to pay the full filing fee is consistent with Congress's purpose of imposing costs on prisoners to deter frivolous suits. *Hubbard*, 262 F.3d at 1197-98. While it might seem that requiring plaintiffs with similar claims to bring separate suits will work against Congress's purpose of reducing the burden of prisoner litigation on federal courts, local rules in this district (and presumably in other districts) permit related cases to be reassigned to a single judge, who may then apply Rule 41(a) of the Federal Rules to consolidate cases presenting common issues of law or fact, effectively treating them as a single suit.

Accordingly, this suit will proceed as a single-plaintiff suit in the name of the first plaintiff, John Clay, who is granted leave to file in forma pauperis.[1] Jones and Smith are dismissed as plaintiffs. Dismissal is without prejudice, and they may bring separate suits if they choose.

---

[1] Pursuant to 28 U.S.C. § 1915(b)(1), Clay is assessed an initial partial filing fee of $13.32. The trust fund officer at Clay's current place of incarceration is ordered to collect, when funds exist, the partial filing fee from Clay's trust fund account and pay it directly to the clerk of court. After payment of the initial partial filing fee, the trust fund officer at the correctional facility where Clay is confined is directed to collect monthly payments from Clay's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Clay's trust fund account shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $150 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Fiscal Dept., and shall clearly identify Clay's name and the case number assigned to this action.

Under 28 U.S.C. § 1915A, another provision of the PLRA, the court is required to review complaints filed by prisoners against governmental entities or their officers or employees and dismiss any portion of the complaint that fails to state a claim upon which relief may be granted. In other words, the court must determine whether, taking the allegations of the complaint as true and viewing them in the light most favorable to the plaintiff, the plaintiff's rights have been violated in a way that the court has power to remedy. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

## I. Conditions of Confinement

Clay's treatment as a pretrial detainee is subject to the limitations of the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition of cruel and unusual punishment that applies to convicted prisoners. Nevertheless, the Seventh Circuit has held that claims of pretrial detainees relating to their conditions of confinement are to be judged under Eighth Amendment standards. *Zentmeyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000); *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000). In order to violate the Eighth Amendment, conditions of confinement must deny "basic human needs" or "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment requires that the government "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Zentmeyer*, 220 F.3d at 810 (*quoting Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). An inmate must satisfy a two-prong test to establish an Eighth Amendment claim: (1) the deprivation alleged must be objectively serious; (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834.

Clay complains that as a result of sleeping on the floor he has red bumps on his face. Sleeping on mattresses on the floor is an unfortunate result of overcrowding, but is not a constitutional violation. *Hines v. Sheahan*, 845 F.Supp. 1265, 1269 (N.D.Ill. 1994); *Powell v.*

*Cook County Jail*, 815 F.Supp. 757, 759 (N.D.Ill 1993). Clay does not allege that the defendants could have remedied the situation. Normally, neither a county sheriff nor jail officials can control overcrowding, since it is police and judges -- not to mention the level of criminal activity -- who determine how many inmates must be housed. *See Houston v. Sheahan*, 62 F.3d 902 (7th Cir. 1995). Clay does not allege how sleeping on the floor caused the bumps on his face, or how this was a result of the deliberate indifference of any defendant.

Clay alleges that he has sores in his mouth that he believes to be from the water. He does not allege that other inmates who drink the same water have sores. Again, an unpleasant occurrence at the Jail is not grounds for suit unless it resulted from the intentional act or deliberate indifference of any defendant.

The complaint alleges that for 3-1/2 weeks hot water was not available in the mornings and late evenings. Hot water on demand is not a constitutional requirement. Clay does not allege that he was unable to bathe or shower. Clay states that as a Muslim he needs water for ritual ablution before each of the five daily prayers, but does not allege that hot water is religiously required. The court takes judicial notice of the fact that millions of Muslims practice their religion in places where hot water is unavailable.

Clay also complains that the Jail has served prisoners cold cuts at least 24 days in a row, and Clay "is still constipated to this day." Hot food is also not a constitutional requirement. *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992). Food served to prisoners should be nutritionally adequate, but need be neither hot nor tasty. The court will not take Clay's claim of constipation seriously in the absence of allegations that his constipation rose to the level of a medical emergency and he sought medical treatment for it.

## II. Medical Care

The complaint makes a number of allegations regarding lack of medical treatment. A prisoner's constitutional right to medical care is limited. "A prison is not required by the Eighth Amendment to give a prisoner medical care that is as good as he would receive if he were a free

5

person, let alone an affluent free person. He is entitled only to minimum care." *Maggert v. Hanks*, 131 F.3d 670, 671 (7th Cir. 1997)(citations omitted). Further, medical negligence, even malpractice, is not a constitutional violation. The Constitution only requires that correctional staff not be deliberately indifferent to a prisoner's objectively serious medical needs. A condition is objectively serious if failure to treat it "could result in further significant injury or the `unnecessary and wanton infliction of pain.'" *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). In order for a defendant to be deliberately indifferent to a serious medical need, he or she must actually know of it, and know that it is serious. *Sherrod*, 223 F.3d at 611.

Clay alleges that detainees should receive medical examinations so that sick inmates can be isolated rather than placed with healthy inmates, and this is not being done. But the Constitution does not require that jails and prisons be managed in the best or most prudent manner. The Constitution only requires that serious threats to prisoners' health or safety not be ignored. Clay does not allege that the Jail's policy caused him to be infected with a serious illness, or that he is now under a serious risk of infection. Clay cannot sue for a generalized, low-level risk of harm. *See Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001)(small amount of radium in prison water comparable to that found in many municipal water supplies does not violate Eighth Amendment). Clay has not alleged that any defendant knows of inmates with serious infectious diseases, and deliberately permits them to mingle with healthy inmates. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Clay alleges that his requests for medical care were ignored, saying "they won't do a follow up on me to see if I'm still sick." Clay does not allege what was wrong with him, why he believes he needed or needs medical care, and whom he contacted about it. As it is unclear whether Clay can state a constitutional claim, Clay may submit an amended complaint alleging the nature of his serious medical need, what he did to bring it to the attention of the defendants, and what each defendant did or did not do in response.

### III. Religious Freedom

Clay asserts that his First Amendment right to freedom of religion is being infringed:

I'm being deprived the right to exercise my beliefs in Al-Islam. No Imam is here to teach the believers which hinders my spiritual growth, and also deprives me of the spiritual blessings of going to Jumar every Friday. Christians have services, I should be allowed Muslim services.

It is unclear whether Clay is alleging that he and other Muslims are prevented from holding Muslim services, or that his complaint is that the Jail does not provide a Muslim chaplain. The difference is critical. The Bill of Rights is largely a charter of negative liberties. "It creates areas in which the government has to let people alone; it does not entitle them to demand services ...." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000)(*citing DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195-97 (1989).

Incarceration, whether pretrial detention or imprisonment, imposes restrictions and limitations on individual rights. *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* at 546 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 556). This includes freedom of religion. A prison or jail need only afford inmates a reasonable opportunity to practice their religions and may not discriminate against a particular religion. *See Cruz v. Beto,* 405 U.S. 319, 322 (1972); *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A jail or prison is not required to employ a chaplain for each faith among the inmate population. *Al-Alamin*, 926 F.2d at 683, *citing Cruz,* 405 U.S. at 322 n. 2. Economic or security constraints may require that the needs of inmates of one faith be accommodated differently from those of another. *Al-Alamin*, 926 F.2d at 686. The test of a correctional institution's approach to inmate's religious practice is evenhandedness and reasonable relationship to legitimate interests such as security, cost, availability of resources and the like. *See Turner v. Safley,* 482 U.S. 78 (1987); *Alston v. DeBruyn*, 13 F.3d 1036, 1039-40 (7th Cir. 1994); *Al-Alamin*, supra.

7

It appears that Clay's complaint is not that the Jail forbids Muslim services, but that the Jail does not provide an imam so that Friday services can be held.[2] Clay does not allege that a qualified imam is available to lead Muslim services at no expense to the county but is not permitted to do so. If Clay believes that because the Jail employs a Christian chaplain it is constitutionally required to employ a Muslim chaplain, he is mistaken. Muslims, like Jews, are a small minority in Winnebago County and cannot expect an institution to allocate the same resources to their spiritual needs as it does to the far larger number of Christian detainees. Muslim detainees therefore have no absolute "right" to have an imam available, just as Jewish detainees have no "right" to a rabbi. Failure to provide an imam to conduct services for Muslim detainees violates the Constitution only if, under the circumstances, it is so unreasonable as to amount to discrimination.

Clay may amend his complaint to clarify his claim of religious discrimination. If Clay's complaint is that the Jail does not provide an imam to conduct Muslim services, Clay should explain why this is unreasonable.

## IV. Access To The Courts

According to Clay, "the law library isn't in use, which deprives me of obtaining freedom, deprives me to learn my rights as a prisoner, and I have no way to research any case law." Again, Clay appears to believe that his constitutional rights are more expansive than they are. *Bounds v. Smith*, 430 U.S. 817, 828 (1977), held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." But in *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court sharply limited *Bounds*, making clear that prisoners have a right of access to the courts,

---

[2] "Jumah prayer is a Muslim service taking place every Friday. Orthodox Muslims gather together on this day, leaving all other business behind. During Jumah prayer, the Holy Quran, the Muslim religious scripture, is read. An imam, the individual responsible for leading prayer in the Muslim community, gives a Khutbah, which is a sermon interpreting Quranic verses." *Alamin*, 926 F.3d at 682.

8

not a right to law libraries or legal services as such. *Id.* at 351. The Court disclaimed statements in *Bounds* that "appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court." *Id.* at 354. In other words, the Jail has no obligation to enable Clay to "learn [his] rights as a prisoner."

Because there is no free-standing right to a law library or legal assistance, Clay's right of access to the court has not been infringed unless he has been hindered in pursuing a meritorious legal claim. *Id.* at 351. The Court gave as examples a plaintiff whose complaint was dismissed for failure to satisfy a technical requirement he could not have discovered because of deficiencies in the prison's legal assistance program, or who had suffered arguably actionable harm but was so stymied by the inadequacies of the prison law library that he was unable to file a complaint. *Id.* Unless a plaintiff can show this kind of injury, the Court held, he lacks standing to sue.

Clay has not alleged any suit or claim he was, or is, unable to bring to the attention of a court. Clay's assertion that he has been "deprived of obtaining freedom" presumably means that he cannot do research in connection with his defense to the criminal charges pending against him. With respect to Clay's criminal defense, the state has fulfilled its obligation by offering the services of a public defender, and that obligation has been fulfilled even if Clay seeks to defend himself. *See United States v. Byrd*, 208 F.3d 592, 593(7th Cir. 2000); *United States v. Chapman*, 954 F.2d 1352, 1362 (7th Cir. 1992); *United States v. Moya-Gomez*, 860 F.2d 706, 743 (7th Cir.1988), *cert. denied*, 492 U.S. 908 (1989); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988); *United States ex rel. George v. Lane*, 718 F.2d 226, 227 (7th Cir. 1983). With respect to challenging the conditions of his confinement, Clay's filing the present complaint is persuasive evidence that his access to the courts is unimpaired.

Clay complains that Jail officials make copies of all "legal work," "which enables them to know each point in a civil suit." The court understands this to mean that when detainees need copies of papers to be filed in court, copies are made by Jail staff who are then able to read them. This is not a constitutional violation. Normally materials filed with a court are kept in a

public file where they can be read by anyone; giving Jail employees a look at materials that will be accessible to the public anyway does not raise constitutional problems. *See Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987). It is certainly reasonable for the Jail to require that copying be done by Jail staff, given the possibility that detainees may intentionally or accidentally damage copy machines or use them for improper purposes.

## V. Conclusion

The complaint is dismissed for failure to state a claim upon which relief may be granted. Because Clay may be able to state a claim with respect to denial of medical care or interference with his practice of Islam, Clay may file an amended complaint restating either or both of these claims within thirty days of this order. Because the PLRA requires exhaustion of available administrative remedies before filing suit, 42 U.S.C. § 1997e(a), Clay should attach copies of all relevant grievances and any responses received from Jail staff. Together with the signed amended complaint, Clay is directed to submit a copy for each defendant named in the caption of the complaint and a copy for the court. Copies may either be photocopies or exact handwritten copies. The clerk is directed to send Clay five copies of the court's amended complaint form.

IT IS SO ORDERED.

Philip G. Reinhard, Judge
United States District Court

DATED: November 5, 2001